**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |  |
|---|---|
| CHARLES P. SAMENOW, <br>     *Plaintiff*, <br>   v. <br> CITICORP CREDIT SERVICES, INC., <br>     *Defendant.* | Civil Action No. 16-1346 (CKK) |

**MEMORANDUM OPINION**
(May 25, 2017)

Defendant, by the real party-in-interest, Citibank, N.A., has moved this Court to compel an arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, of Plaintiff's claims under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*, stemming from the termination of five credit card accounts, apparently without explanation. Plaintiff is proceeding *pro se*. The pending motion pertains to this and four related actions,[1] which were previously consolidated by the Court, with each action corresponding to one of the five credit card accounts at issue.[2] Defendant also requests a stay of this consolidated action until the arbitration is resolved. Upon consideration of the pleadings,[3] the relevant legal authorities, and the record for

---

[1] The civil action numbers for the other four cases are: 16-1351, 16-1352, 16-1354, and 16-1356.

[2] Plaintiff asks the Court to consider reversing its prior decision to consolidate these five actions. Opp'n Mem. at 8. In the Order Consolidating Cases, ECF No. 13, the Court indicated that it "may revisit this consolidation decision *sua sponte* at a later point in these proceedings if, ultimately, there prove to be substantially different legal or factual issues raised with respect to the various claims or defenses in this action." Having now reviewed the record, which does not reflect any significant factual or legal differences between the consolidated actions, and given that these cases shall now proceed to arbitration, the Court finds no reason to revisit its decision on consolidation.

[3] The Court's consideration has focused on the following pleadings:

- Mem. in Supp. of Def.'s Mot. to Compel Arbitration and Stay Action, ECF No. 16-1 ("Def.'s Mem.");

1

purposes of the pending motion, the Court **GRANTS** Defendant's [16] Motion to Compel Arbitration and Stay Action.[4] This action shall remain **STAYED** pending conclusion of the arbitration.

## I. BACKGROUND

Plaintiff opened five credit card accounts with Defendant in the District of Columbia between 2010 and 2016. Opp'n Mem. at 6. In March 2016, Defendant terminated these accounts, allegedly "without providing . . . a reason for its action." *Id*. Each of the five accounts is associated with a card agreement that was mailed to Plaintiff (the "Card Agreements"). Decl. of Kelly Booth, ECF No. 16-2, ¶¶ 6–10. Defendant has provided copies of "exemplar" versions of these Card Agreements, which were created by Defendant in the course of its regularly conducted business activity, and Plaintiff does not challenge the accuracy of these documents. *Id*. ¶ 3. For two of the credit lines, with account numbers ending in 1436 and 3347 (the "1436 Account" and the "3347 Business Account"), the original Card Agreements mailed to Plaintiff at the time the accounts were opened contained arbitration provisions. *Id*. ¶¶ 6, 10. For the other three credit lines, those with account numbers ending in 4726, 1489, and 0386 (the "4726, 1489, and 0386 Accounts"), the original Card Agreements did not contain arbitration provisions, but were subsequently added through notices of amendment mailed to Plaintiff between September and October 2015. *Id*. ¶¶ 7–9. The Court refers to the arbitration provisions found in the five Card Agreements as the

---

- Mem. of Law in Opp'n of Mot. to Compel Arbitration and Stay Action, ECF No. 22 ("Opp'n Mem.");
- Reply Mem. in Supp. of Def.'s Mot. to Compel Arbitration and Stay Action, ECF No. 23 ("Reply");
- Sur-Reply to Def.'s Reply Mem. in Supp. to Compel Arbitration and Stay Action, ECF No. 24 ("Surreply").

[4] Because the Court finds that Plaintiff's Surreply was helpful to its resolution of this matter, the Court **GRANTS** Plaintiff's [24] Motion for Leave to File Surreply.

2

"Arbitration Agreements."

The language in each such agreement is approximately the same, except for the following differences: (a) all five accounts provided for arbitration before the American Arbitration Association, but two provide additional options (*infra* at 16); (b) two agreements include a severability clause, but the others do not (this is irrelevant to the Court's decision, as there is no finding that any portion of the agreements is invalid); and (c) four of the agreements indicate that the rules of the arbitral forum are trumped by the terms of the Card Agreements, to the extent there is a conflict between the two (*infra* at 16–17). *See* Opp'n Mem. at 8–9 (conceding that these are the only material differences between the five Arbitration Agreements). Finally, each of the Card Agreements contains a choice-of-law provision specifying that federal and South Dakota law "govern[] the terms and the enforcement of this agreement." Def.'s Mem. at 3 (citing Decl. of Kelly Booth, ECF No. 16-2, Exs. 1–5).

## II. LEGAL STANDARD

The FAA provides that "a written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable save upon any grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The final phrase in section 2 of the FAA "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability" under the applicable state law. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). A party seeking to enforce an arbitration agreement may petition a district court with jurisdiction "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

A motion to compel arbitration is treated as "a request for summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008); *see also Haire v. Smith, Curie & Hancock LLP*, 925 F. Supp. 2d 126, 129 (D.D.C. 2013). "Under Rule 56(c), summary judgment is appropriate only if 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Aliron Int'l*, 531 F.2d at 865 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). "The party seeking to compel arbitration must 'present evidence sufficient to demonstrate an enforceable agreement to arbitrate.'" *Haire*, 925 F. Supp. 2d at 129 (quoting *Hill v. Wackenhut Servs. Int'l,* 865 F. Supp. 2d 84, 89 (D.D.C. 2012)). "The burden then shifts to plaintiffs to show that there is a genuine issue of material fact as to the making of the agreement." *Id.* "The Court will compel arbitration if the pleadings and the evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Fox v. Computer World Servs. Corp.,* 920 F. Supp. 2d 90, 96 (D.D.C. 2013)).

If arbitration is compelled, section 3 of the FAA permits the district court to stay proceedings pending completion of the arbitration. 9 U.S.C. § 3 (the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement").

### III. DISCUSSION

The analysis below proceeds in three parts. First, the Court concludes that Plaintiff's contract defenses must be assessed under District of Columbia law. Second, the Court finds that Plaintiff assented to the Arbitration Agreements, and third, that those agreements are not procedurally or substantively unconscionable. As a result, and because the claims at issue are

plainly covered by the terms of the Arbitration Agreements, arbitration shall be compelled, and this matter shall be stayed.

　A. Choice of Law

As a threshold issue, the parties disagree on the law that should apply to determine the validity and enforceability of the Arbitration Agreements. Defendant contends that South Dakota law should apply because of the choice-of-law provisions in the Card Agreements. Plaintiff challenges the enforceability of those provisions, and furthermore contends that District of Columbia law should apply given the factual nexus between the contracting of the Card Agreements and the District of Columbia. In particular, Plaintiff resides, claims to have entered the Card Agreements, and claims to have predominately used the credit cards in the District of Columbia. Opp'n Mem at 6, 31.

In an action brought pursuant to the FAA, such as this one, "'federal courts use the conflict of law principles applied by the state in which they sit.'" *McMullen v. Synchrony Bank*, 164 F. Supp. 3d 77, 87 (D.D.C. 2016) (citing *Aneke v. Am. Exp. Travel Related Servs.*, Inc., 841 F. Supp. 2d 368, 375 (D.D.C.2012)). Consequently, the Court applies District of Columbia law in the first instance to determine what state law should apply in adjudicating Plaintiff's challenges to the Arbitration Agreements. As a general rule, District of Columbia law holds that "'parties to a contract may specify the law they wish to govern, as part of their freedom to contract, as long as there is some reasonable relationship with the state specified.'" *Ekstrom v. Value Health, Inc.*, 68 F.3d 1391, 1394 (D.C. Cir. 1995) (citing *Norris v. Norris*, 419 A.2d 982, 984 (D.C. 1980)). Defendant contends that under this standard, South Dakota law should apply as the Arbitration Agreements call for the application of South Dakota law, and Defendant's corporate residence is in South Dakota, meaning that there is a "reasonable relationship" between the contracts and that

state. Nonetheless, this line of analysis is flawed in that it presumes the validity of the choice-of-law provision in the Arbitration Agreements, which Plaintiff expressly challenges in his opposition as both procedurally and substantively unconscionable. Surreply at 3. As a result, the Court would first need to determine whether a valid and enforceable agreement exists, by application of District of Columbia law, before it could enforce the choice-of-law provisions, and apply South Dakota law. *See Amirmotazedi v. Viacom, Inc.*, 768 F. Supp. 2d 256, 261 n. 2 (D.D.C. 2011) ("in cases such as this where one party is alleging that no contract was formed, it would be premature to enforce the choice of law provision before deciding whether an agreement exists").

Given the circumstances of this case, however, the Court need not reach this far.[5] "Under District of Columbia choice-of-law principles, the absence of a true conflict compels the application of District of Columbia law by default." *Signature Tech. Sols. v. Incapsulate, LLC*, 58 F. Supp. 3d 72, 80 (D.D.C. 2014) (internal quotation marks and alternations omitted); *see also GEICO v. Fetisoff*, 958 F.2d 1137, 1141 (D.C. Cir. 1992) ("Under [the District of Columbia] approach, the first step is to determine whether a 'true conflict' exists . . . ."). A false conflict is one where the laws of the two states are "1) the same; 2) different but would produce the same outcome under the facts of the case; or 3) when the policies of one state would be furthered by the application of its laws while the policy of the other state would not be advanced by the application of its laws." *Greaves v. State Farm Ins. Co.*, 984 F. Supp. 12, 14 (D.D.C. 1997) (Kollar-Kotelly, J.), *aff'd*, 172 F.3d 919 (D.C. Cir. 1998). Here, Plaintiff challenges the Arbitration Agreements as invalid for lack of mutual assent, and as unenforceable, due to unconscionability. Based on this

---

[5] As such, and because the Arbitration Agreements are severable from the remainder of the Card Agreements, the Court does not discuss Plaintiff's challenges to the validity and enforceability of the choice-of-law provisions. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 84, (2010) ("as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract" (internal quotation marks omitted)).

Court's review, there is no relevant, substantive difference between District of Columbia and South Dakota law with respect to procedural and substantive unconscionability, or contract formation, and to the extent there are differences, they do not affect the outcome of this case given the factual circumstances. Consequently, the Court proceeds by applying District of Columbia law, but in the interest of completeness, provides parallel references to South Dakota law where appropriate.

B. Existence of an Agreement to Arbitrate

In his opposition, Plaintiff does not appear to contest that he entered the Card Agreements and their attendant Arbitration Agreements, and only challenges the enforceability of the latter on the basis of procedural and substantive unconscionability. *See* Opp'n Mem. at 6 ("Plaintiff, entered 5 separate contracts with [Defendant] in the District of Columbia during the period of 2010 – 2016 for credit cards"). However, in his surreply, Plaintiff contends that he "was not aware of the arbitration provision until [he] was informed of it by opposing counsel as part of this dispute." Surreply at 2. Plaintiff also emphasizes that he does not "admit to having received the 'Card Agreements' and 'Amended Agreements' with the arbitration and choice of law provision . . . ." *Id*. Nonetheless, Plaintiff does not proffer any credible factual matter to contest that he received these agreements, and that they each expressly provided that failure to terminate the applicable credit line within a specified time period would be deemed an assent to the terms of the agreement.

Elsewhere in his briefing, Plaintiff discusses at length certain purported differences between South Dakota and District of Columbia law on contract formation, and in particular, the requirement of mutual assent as to all material contract terms, but again does not specifically contest the fact that he received the Card Agreements, and that they called for assent by use of the credit cards and failure to terminate within a specific period. *See* Opp'n Mem. at 29–30. Furthermore, the Court notes that while South Dakota law is more specific on the validity of credit

7

card agreements that call for acceptance by use within a specific time period,[6] District of Columbia law provides generally that "an offeror is entitled to prescribe an exclusive method of acceptance . . . ," *Vaulx v. Cumis Ins. Soc'y, Inc.*, 407 A.2d 262, 264 (D.C. 1979), and that the method of acceptance can be a physical act, *see Malone v. Saxony Co-op. Apartments, Inc.*, 763 A.2d 725, 729 (D.C. 2000) (tendering earnest money requested by the seller was "unequivocal[] assent" to the terms of the contract). Plaintiff relies on *Synchrony* for the proposition that "this very court struck down 'use' of a credit card as an exclusive determination of full assent under Washington, D.C. law." Opp'n Mem. at 30. In that case, however, the district court found that even though the pertinent card agreement called for assent by "use," plaintiff did not actually use the credit card because she merely made "payments against monthly billing statements" so her credit rating would not be affected while she sought to close the credit line, which she alleged was opened in her name without authorization. *Synchrony*, 164 F. Supp. 3d at 88–89. Here, however, Plaintiff does not contest the fact that he used the relevant credit cards, and in fact, the very nature of his suit is for damages stemming from the termination of the credit lines, which presumes the existence of valid agreements entitling him to use of those accounts.

In sum, the Card Agreements called for assent by use of the credits cards and failure to terminate within a fixed period. Plaintiff does not contest his receipt of the Card Agreements. Even if he did, the common law presumes "that a letter properly addressed, stamped, and mailed, and not returned to the sender, has been delivered to the addressee," *Kidd Int'l Home Care, Inc. v. Prince*, 917 A.2d 1083, 1087 (D.C. 2007), and Defendant has proffered a declaration stating that

---

[6] *See* S.D. Codified Laws § 54-11-9 ("use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer").

the Card Agreements were mailed to Plaintiff in the ordinary course of business. *See supra* at 2. Non-receipt of the Card Agreements would also be a dubious position for Plaintiff to take, as it would mean non-assent to the entirety of the agreements, which would seemingly forestall this action, as it seeks damages predicated on the existence of those agreements. In any event, Plaintiff's more precise position appears to be that he was "not aware" of the Arbitration Agreements because they were "hidden and not made conspicuous . . . ." Surreply at 2. However, that Plaintiff did not read the arbitration provision, when he otherwise received and assented to the contract as a whole, does not alter the validity of the contract or that provision, although the visibility of the language may be relevant to whether the contract is unenforceable on the basis of procedural unconscionability, which is assessed below. *See Curtis v. Gordon*, 980 A.2d 1238, 1244 (D.C. 2009) (citing RESTATEMENT (SECOND) OF CONTRACTS § 157, cmt. b ("Generally, one who assents to a writing is presumed to know its contents and cannot escape being bound by its terms merely by contending that he did not read them; his assent is deemed to cover unknown as well as known terms.")). Accordingly, sufficient evidence has been presented for the Court to conclude that the parties assented to the Arbitration Agreements, and Plaintiff has not demonstrated a genuine issue of material fact on this point. As a result, the Court proceeds to assess whether these agreements are enforceable in light of Plaintiff's challenges on the basis of procedural and substantive unconscionability.

   C. Enforceability of the Arbitration Agreements

"In the District of Columbia, a party seeking to avoid a contract because of unconscionability must prove two elements: an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. . . . These two elements are often referred to as procedural unconscionability and substantive

unconscionability." *Ruiz v. Millennium Square Residential Ass'n*, 156 F. Supp. 3d 176, 180 (D.D.C. 2016) (citing *Curtis v. Gordon*, 980 A.2d 1238, 1244 (D.C. 2009) and *Urban Invs., Inc. v. Branham*, 464 A.2d 93, 99 (D.C.1983)). Although proof of both elements is generally required, in an "egregious" scenario, proof of only one may suffice to render a contract unenforceable. *Urban Investments*, 464 A.2d at 99. However, absent a showing of procedural unconscionability, "the party seeking to avoid the contract will have to show that the terms are so *extreme* as to appear unconscionable according to the mores and business practices of the time and place." *Id.* at 100 (internal quotation marks omitted) (emphasis added).

Whether a party had "meaningful choice," and consequently whether the contract was procedurally unconscionable, "can only be determined by consideration of all the circumstances surrounding the transaction." *Williams v. Walker–Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965). In particular, courts assess whether "each party to the contract, considering his obvious education or lack of it, ha[d] a reasonable opportunity to understand the terms of the contract, or [whether] the important terms [were] hidden in a maze of fine print and minimized by deceptive sales practices[.]" *Id*. The mere fact that a contract is presented in boiler-plate form on a take-it or leave-it basis—i.e., as a so-called "contract of adhesion"—does not render the signatory without meaningful choice, and the contract thereby procedurally unconscionable. Rather, there "must be something more: a showing that the parties were greatly disparate in bargaining power, that there was no opportunity for negotiation *and* that the services could not be obtained elsewhere. . . . Absent this last condition, the party retains the 'real choice' to simply go deal with someone else." *Ruiz*, 156 F. Supp. 3d at 181 (internal quotation marks omitted) (citing *Moore v. Waller*, 930 A.2d

176, 182 (D.C. 2007)).[7]

1. *Procedural Unconscionability*

Plaintiff challenges the Card Agreements as procedurally unconscionable on two bases. First, with respect to the two Card Agreements that originally included Arbitration Agreements, the 1436 Account and the 3347 Business Account, Plaintiff contends that he did not have a meaningful choice to opt-out of those agreements because the text of the Card Agreements was not disclosed to him at the time he applied for the credit cards, and once he received the Card Agreements, he could only opt-out by closing the relevant credit line, which would have had a negative effect on his credit score. Opp'n Mem at 11–14. The Court finds this line of argumentation wholly unpersuasive.

As an initial matter, the application process for these credit cards includes a link to certain "Terms and Conditions," which in turn state that "[i]f you are approved for a credit card account, you will receive a Card Agreement before you can use your account"; they further explain that the terms of the Card Agreement take effect upon use of the credit card, or within 30 days, if the account is not cancelled. Opp'n Mem., Ex. B, at 3. While a copy of the Card Agreement is not attached to the Terms and Conditions, Plaintiff concedes that one is accessible from Defendant's website, although he claims that it is not as conspicuous as the Terms and Conditions. Opp'n Mem. at 12. Even if the Court were willing to entertain this argument from a credit card neophyte,

---

[7] Like District of Columbia law, South Dakota law requires the presence of both substantive and procedural unconscionability in order to void a contract. *Nygaard v. Sioux Valley Hosps. & Health Sys.*, 731 N.W.2d 184, 194–95 (S.D. 2007) ("In determining whether a contract is an unenforceable contract of adhesion, this Court looks not only at the bargaining power between the parties but also at the specific terms of the agreement."). With respect to substantive unconscionability, South Dakota law similarly assesses whether the terms of the contract are "overly harsh or one-sided," *id.*, and with respect to procedural unconscionability, likewise assesses whether the party challenging enforcement had a "meaningful choice," *see Scotland Vet Supply v. ABA Recovery Service, Inc.*, 583 N.W.2d 834, 837 (S.D. 1998).

Plaintiff can hardly be considered one, as he was the holder of five credit cards from Defendant alone, and was rejected from another financial institution for "having too many existing accounts." Opp'n Mem., Ex. G. Consequently, given his experience, and no claimed lack of education, the Court finds it unlikely that Plaintiff was unable, if he were so willing, to navigate the "maze" of Defendant's credit card application and review the arbitration clauses contained in the Card Agreements.

Even barring this finding, however, there is no doubt that for the two accounts at issue, the Card Agreements clearly and unambiguously notified him that any related claims would be subject to arbitration. *See supra* at 2. As noted, Plaintiff contends that he did not have a meaningful opportunity to opt-out upon receipt of the Card Agreements, but he offers no credible evidence that opting-out would have had such a dramatic impact on his credit score as to render illusory for him the choice to terminate the pertinent accounts. In fact, the potential impacts noted by Plaintiff all seemingly result either in the return of Plaintiff's credit profile to its original state prior to the opening of the relevant credit lines, or are simply an unavoidable consequence of applying for credit cards. Opp'n Mem. at 13 (describing potential impact on "length of credit history," "credit card utilization ratio," and the number of "hard inquiries"). Simply put, it is not unconscionable under the circumstances for Plaintiff to be required to relinquish the benefit of the bargain that he obtained from entering the Card Agreements, when he seeks to terminate those agreements shortly after entering them, and hard inquiries are an unavoidable and well-known consequence of applying for credit cards.[8] This is not, for example, a case in which a plaintiff relies on the

---

[8] For similar reasons, the Court is also unmoved by Plaintiff's argument that he lacked meaningful choice because the opening of the five credit lines precluded him from obtaining credit cards from competing institutions. Opp'n Mem at 13. The only evidence of this is a letter from Chase Bank, indicating that he was rejected for another credit card because of "too many *existing* accounts." Opp'n Mem., Ex. G, at 1 (emphasis added). Presumably, however, the credit lines would no longer

availability of credit and incurs debt, only to have draconian terms foisted upon them with the illusory "option" to terminate the account within a short and unrealistic timeframe. *See, e.g., Sears Roebuck & Co. v. Avery*, 593 S.E.2d 424, 426–27 (N.C. Ct. App. 2004) (requiring cardholder to pay off entire balance within 30 days, which she could not afford to do). Furthermore, in its review of the pertinent case law, the Court has found only one published decision in which a similar argument was raised, and there, as here, the district court concluded that plaintiff's position was too speculative to warrant a finding of procedural unconscionability:

> Plaintiff suggests that the arbitration clause is nonetheless procedurally unconscionable because he believed that opting-out of the arbitration provision and/or cancelling his card would have somehow injured his credit rating. However, he has provided no factual basis for that assumption, nor has he cited any legal authority holding that a plaintiff's subjective belief, even if unsupported or unreasonable, should result in a finding of procedural unconscionability.

*Dumanis v. Citibank (S. Dakota), N.A.*, No. 07-CV-6070 (CJS), 2007 WL 3253975, at *3 (W.D.N.Y. Nov. 2, 2007). Plaintiff's additional contention that he lacked meaningful choice because arbitration agreements are "industry standard," Opp'n Mem. at 14, is wholly unsupported by credible evidence in the record before the Court.[9] Consequently, for all of the foregoing reasons,

---

be *existing* accounts if they were cancelled, and more generally, Plaintiff has not presented any evidence that financial institutions other than Chase Bank would have similarly declined to extend him credit.

[9] Plaintiff seemingly concedes this point by representing that it "is true that most credit card companies, *but not all*, have similar arbitration agreements . . . [,]" surreply at 6 (emphasis added), but then elaborates on this position by claiming that he had no alternative other than the "Barclay Aviator Card," which also requires arbitration, because only that card offered the same benefits as those provided by the credit cards at issue in this case for travel on American Airlines, apparently his preferred carrier. *Id*. Nonetheless, although Plaintiff could have suffered some inconvenience if he were deprived of "mileage awards . . . and discounts on American Airlines in-flight purchases," the law of unconscionability does not recognize such a limited view of what it means to have an alternative choice. *See Ruiz*, 156 F. Supp. 3d at 181 (rejecting argument that plaintiff did not have meaningful choice under District of Columbia law because the condominium for which he contracted was "unique").

the Court concludes that Plaintiff has failed to establish procedural unconscionability with respect to the Card Agreements associated with the 1436 Account and the 3347 Business Account.

For the three remaining Card Agreements (i.e., the 4726, 1489, and 0386 Accounts), the Arbitration Agreements were added by so-called "bill stuffer" amendments that were sent to Plaintiff via U.S. mail. Opp'n Mem. at 7; Decl. of Kelly Booth, ECF No. 16-2, at 3. Each of these amendments clearly indicated that "Your new Card Agreement is here," and on the second page of each such notice, included a heading entitled "Arbitration," which directed Plaintiff to the third and fourth pages, which described the arbitral process in detail. Decl. of Kelly Booth, ECF No. 16-2, Exs. 2–4. Most importantly, as Plaintiff concedes, each of these notices informed Plaintiff that he could opt-out of the new arbitration provision, without cancellation of the account, by sending notice to Defendant within approximately two months. *Id*. Consequently, Plaintiff does not challenge the Arbitration Agreements associated with these three accounts on the basis that he lacked "meaningful choice," but instead claims that Defendant failed to provide adequate notice of the amendments because the pertinent notices were only sent via U.S. mail, and not also by electronic means. Opp'n Mem. at 15–17. In particular, Plaintiff contends that the notices were not sufficiently conspicuous because he had previously received other types of "important" correspondence from Defendant electronically, had been encouraged and did in fact sign up for electronic delivery of billing statements, and tended to only receive "junk" mail from Defendant. *Id*.

While the Court certainly appreciates the pervasiveness of email correspondence, sending of legal materials by U.S. mail remains a time-honored and reasonable means of providing notice, and as noted above, District of Columbia law continues to abide by the presumption that letters properly addressed and sent via U.S. mail are presumed to be received. *See supra* at 8. This is

especially true here, where the mailings, rather than evidencing any bad faith on the part of Defendant, instead show an intent to unambiguously relay important changes to the Card Agreements. In other words, the Court finds no indicia, of any sort, that Defendant sought to conceal the import of the notices from Plaintiff, and Plaintiff cannot credibly argue that he did not receive some important materials from Defendant via U.S. mail, as the Card Agreements for the other two accounts were also sent via U.S. mail. Decl. of Kelly Booth, ECF No. 16-2, ¶¶ 6, 10. Defendant, moreover, indicates that it was *required* by state and federal law to mail the amended Card Agreements, as they constituted substantial changes to the terms of Plaintiff's credit accounts. *See* Reply at 9 (citing S.D. Codified Law § 54-11-12 and 12 C.F.R. § 1026.9). As such, and given that Plaintiff has adduced no evidence of lack of education or other extenuating circumstances, the Court has no difficulty in concluding that the mailing of the notice was not unconscionable under the circumstances of this case. *Cf. Skirchak v. Dynamics Research Corp.*, 508 F.3d 49, 60 (1st Cir. 2007) ("There was nothing objectionable about the use of e-mail itself. But the content, the obscurity, and the timing of the e-mail and the failure to require a response raise unconscionability concerns."). Accordingly, the Court concludes that Plaintiff has not established procedural unconscionability with respect to any of the five Card Agreements.[10]

---

[10] Plaintiff's reliance on *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 20 (2d Cir. 2002) (Sotomayor, C.J.), is misplaced. As an initial matter, that decision by the United States Court of Appeals for the Second Circuit, interpreting California law, is not binding on this Court. Furthermore, as a substantive matter, *Specht* is factually inapposite as it addressed the sufficiency of electronic notice in the context of agreements executed over the internet, and in fact noted that "receipt of a physical document containing contract terms or notice thereof is frequently deemed, in the world of paper transactions, a sufficient circumstance to place the offeree on inquiry notice of those terms." *Id.* at 31. Finally, the issue in *Specht* was whether the electronic notice was sufficiently conspicuous, and for the reasons already stated, the Court finds that the mailed notice in this case was clear and unambiguous regarding the addition of an arbitration provision. *Cf. id.* at 31 (finding that the webpage at issue "did not carry an immediately visible notice of the existence of license terms or require unambiguous manifestation of assent to those terms").

2. *Substantive Unconscionability*

Substantive unconscionability requires a finding that the terms of an agreement are unreasonably unfavorable to the party challenging the enforcement of the contract. Because the Court has determined that the Card Agreements are not procedurally unconscionable, in order for Plaintiff to succeed on the basis of substantive unconscionability, he must show that the terms of the Card Agreements are especially "egregious" or "extreme." *See supra* at 10. In the Court's view, none of the terms challenged by Plaintiff are unreasonably one-sided, let alone so egregious or extreme as to warrant a finding of substantive unconscionability in the absence of procedural unconscionability.

First, Plaintiff contends that the Arbitration Agreements are unfairly one-sided because they limit the choice of arbitral forum to the American Arbitration Association ("AAA"), with one account also adding the option to choose JAMS, and another the National Arbitration Forum ("NAF"). Opp'n Mem. at 18. Of course, Defendant is equally limited to use of these venues, and while the Court could perhaps countenance this argument if the arbitration provisions were limited to a particular arbitrator, the AAA is one of the largest and best-known arbitration venues in the country, with a plethora of arbitrators that can be selected pursuant to its well-established rules of procedure. *See, e.g.*, *Wallace v. Red Bull Distrib. Co.*, 958 F. Supp. 2d 811, 825 n.9 (N.D. Ohio 2013) (finding that the requirement to arbitrate before the AAA was "neutral and fair," and that "courts generally regard the AAA rules as being neutral and fair" (internal quotation marks omitted)); *cf. Zaborowski v. MHN Gov't Servs., Inc.*, 936 F. Supp. 2d 1145, 1153 (N.D. Cal. 2013), *aff'd*, 601 F. App'x 461 (9th Cir. 2014) (finding arbitration provision substantively unconscionable because the pool of three arbitrators was selected by defendant, rather than from a list provided by

the AAA).[11] Plaintiff also emphasizes that four of the five agreements provide that arbitration will follow the rules of the chosen forum, unless there is a conflict with the terms of the respective Card Agreement. Opp'n Mem. at 23. Nonetheless, Plaintiff has failed to indicate what that conflict could be, and how it would unfairly prejudice him, and as such, the Court cannot conclude that this limitation is unreasonably one-sided.

Plaintiff's other challenges are aimed less at the specific terms of the Arbitration Agreements, and more at the public policy of arbitration itself. As an initial matter, the Court's determination that the Card Agreements embody valid agreements to arbitrate, "foreclose[s] any claim [Plaintiff] might have had to a jury trial[,]" and consequently, Plaintiff's Seventh Amendment claim is meritless. Opp'n Mem. at 24; *BiotechPharma, LLC v. Ludwig & Robinson, PLLC*, 98 A.3d 986, 996 (D.C. 2014). Furthermore, that arbitration would not provide for written opinions, discovery commensurate with what is available in federal court, or that it would not abide by the Federal Rules of Evidence, Opp'n Mem at 25, are not viable bases for voiding the Arbitration Agreements. *Concepcion*, 563 U.S. at 342 (noting that a state law rule would likely be invalid if it found arbitration agreements unconscionable merely because they "failed to abide by the Federal Rules of Evidence"); *Ruiz*, 156 F. Supp. 3d at 181 (holding that an arbitration provision was not substantively unconscionable under District of Columbia law merely because it did not provide for a written decision or discovery); *Nuyen v. Hong Thai Ly*, 74 F. Supp. 3d 474, 482 (D.D.C. 2014) (arbitration "is a less formal process than a court; the rules of evidence need not be enforced").

---

[11] *See also* Decl. of Kelly Booth, ECF No. 16-2, at 23 (Card Agreement informing Plaintiff that a "single, neutral arbitrator will resolve Claims. The arbitrator will either be a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm.").

Finally, Plaintiff relays a number of public criticisms of the arbitral process, Opp'n Mem. at 19, 27–28, including arbitration before the AAA, and also points to the District of Columbia Court of Appeal's recent decision in *Andrew v. American Import Center*, wherein that court "recognized that the policy that overwhelmingly favors arbitration has been seriously called into question by the realization that all too often, arbitration agreements are included in the language of contracts of adhesion, which consumers must sign in order to make particular purchases." 110 A.3d 626, 634–35 (D.C. 2015). Nonetheless, in the context of this case pursuant to the FAA, the principle that guides the Court's decision is the "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). The Court also notes that a state law policy of unconscionability that would render large swaths of arbitration agreements invalid would likely be at odds with the FAA. *See Concepcion*, 563 U.S. at 341 ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA."), at 346–47 ("the times in which consumer contracts were anything other than adhesive are long past"). In any event, nothing in *Andrew* suggests an intent by the District of Columbia Court of Appeals to displace the well-settled principles of unconscionability that have guided the Court's decision in this matter, and for the reasons already stated, none of those principles warrant a finding of substantive or procedural unconscionability with respect to the Arbitration Agreements embodied in the Card Agreements.

## IV. CONCLUSION

In light of the foregoing, the Court concludes that the parties entered into valid and enforceable Arbitration Agreements with respect to the five credit card accounts underlying this consolidated action. The parties do not contest that those Arbitration Agreements cover the Plaintiff's substantive claims, and the Court agrees, as the agreements call for arbitration of all

claims related to the credit accounts, which plainly covers Plaintiff's claims under the ECOA. Decl. of Kelly Booth, ECF No. 16-2, Exs. 1–5; *see Olle v. 5401 W. Ave. Residential, LLC*, 569 F. Supp. 2d 141, 148 (D.D.C. 2008) (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986)). As such, arbitration must be compelled, 9 U.S.C. §§ 2, 4, and Defendant's request for a stay during the pendency of the arbitration must be granted, 9 U.S.C. § 3. Accordingly, the Court **GRANTS** Defendant's [16] Motion to Compel Arbitration and Stay Action. This action shall remain **STAYED** pending conclusion of the arbitration. Finally, the Court also **GRANTS** Plaintiff's [24] Motion for Leave to File Surreply.

An appropriate Order accompanies this Memorandum Opinion.

Dated: May 25, 2017

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge